STUART, Assignee, v. HINES & EAMES *et al.*

1. Bankruptcy proceedings: JURISDICTION OF STATE COURTS. After the filing of a petition in bankruptcy, which is followed by an adjudication of bankruptcy of the debtor, no valid lien can be acquired

Stuart v. Hines & Eames.

against the property of the bankrupt, by proceedings instituted in the State courts, subsequently to the filing of such petition. The authorities, bearing upon this question, collated by DAY, Ch. J.

2. Pleading: REPLICATION. Under our practice a replication is not necessary to an answer in which no affirmative relief is sought, but which pleads matters merely in defense of the plaintiff's claim.

3. Bankruptcy proceedings: FAILURE OF ASSIGNEE TO DEFEND IN STATE COURT. The assignee in bankruptcy is not estopped from asserting his claim to the property of the bankrupt, by the fact that he failed to appear and defend, in place of the bankrupt, in an action instituted in the State court subsequently to the filing of the petition in bankruptcy. No such duty is required of the assignee.

4. —— SERVICE OF ORDER. An order upon the debtor, in a bankruptcy proceeding, to show cause why the prayer of the petition should not be granted, may be personally served, as well as by publication, outside of the district in which the petition is filed.

5. —— BY WHOM SERVED. It is not necessary that such order should be served by the United States marshal, or by a messenger appointed by the court for that purpose.

6. —— JURISDICTION: PLEADING. In a proceeding, by a portion of the members of a firm, to have the firm and its members adjudged bankrupt, an averment in the petition that petitioners, for six months next preceding the application, have been residents of the district in which the petition is filed, and that they and the other members, within said time, were partners in trade in said district, will, in a collateral proceeding, be regarded as sufficient to confer jurisdiction.

*Appeal from Muscatine District Court.*

MONDAY, DECEMBER 18.

ON the 28th day of September, 1870, the plaintiff filed in the Muscatine district court his petition, claiming that, as the assignee of the estate and effects of Thomas M. Isett, a bankrupt, he is the absolute owner for the uses and purposes set forth in "An act to establish a uniform system of bankruptcy throughout the United States," of certain real estate in the petition particularly described, and that the defendants, George R. Hines and David W. Eames, and Jacob Butler, as their trustee, make some claim to said premises, adverse to the estate and title of the

plaintiff. Plaintiff prays that his title and estate, in and to said premises, be established and quieted, and that the defendants be barred and estopped from claiming or asserting any right, title or interest therein. A like petition was filed in each of the other cases, claiming distinct parcels of real estate.

The defendants, Hines & Eames and Jacob Butler, filed their answer, denying that plaintiff is the owner of the premises described, and averring that Jacob Butler, as trustee, is the owner thereof, in fee. For further answer they allege that all the proceedings in bankruptcy, against Isett, were without jurisdiction, and are void, and that the assignment to plaintiff is void. Each of the defendants in the other cases filed a like answer.

Subsequently the defendants, Hines & Eames and Jacob Butler, filed a further answer, alleging: " That the said defendant, Jacob Butler, as trustee for defendants, Hines & Eames, purchased said premises at sheriff's sale, made under an execution issued from the office of the clerk of this court, upon a judgment regularly obtained at the June term of this court in the year 1869, as will more fully appear from an inspection of the records and papers of the case entitled *Hines & Eames* v. *Isett, Kerr & Co.*, in which a writ of attachment was issued against the defendants, Thos. M. Isett, John Kerr and Watson B. Farr; and the said premises were, on the 13th day of February, 1869, attached as the property of defendants. That this court, before any other legal proceedings were had, obtained full and exclusive jurisdiction of the parties and the subject-matter of the action. That neither of the said defendants, nor the said John M. Stuart, appeared or made defense in said action; and defendants aver that said defendants, Isett, Kerr & Co., and the said plaintiff in this action, are estopped from asserting any claim or title to said premises, so long as said judgment remains unreversed and is not canceled or set aside."

The defendants in each of the other causes filed like answers, differing only as to the dates of levying the attachments, save that the defendants, Powers and New-man, aver that their suit is still pending in the circuit court of Muscatine county.

The causes were tried by the court, and in each of them judgment was rendered for the plaintiff.

The defendants appeal.

*Cloud & Broomhall* for the appellants :

I. That the State courts had jurisdiction, and that the proceedings in those courts were regular, is not disputed ; nor will it be claimed that the judgments and subsequent proceedings in the State courts would not be final, in the absence of the proceedings in bankruptcy.

The judgment and subsequent proceedings in the State courts would conclude all the parties in interest, and could not be questioned in any collateral proceedings, unless the bankruptcy proceedings render them absolutely void.

The defendants have pleaded these judgments and proceedings in estoppel of plaintiff's claims. If they are not absolutely void, but only voidable, then they could not be disregarded, but must have been set aside before plaintiff could bring his suits.

And here we claim that from the state of the pleadings, the validity of the judgments and proceedings in the State courts cannot be questioned.

The plaintiff claims in his petition under the assignment in bankruptcy. Defendants deny the validity of his claims, and say that the court in bankruptcy acted without juris-diction, and that said assignment is void. Defendants then file their claims of title under the proceedings in the State courts ; they set out those proceedings, and allege that by virtue of said proceedings they are the owners of the premises in dispute, and that they have title in fee. Under the statute (Revision, § 2880, subdiv. 4 and 6,

and section 2881), we claim that our answers, in so far as they set up title in defendants, make a counter-claim of title such as must be denied by plaintiff, or they must be taken and treated as admitted by the pleadings; and we insist that, under the present state of the pleadings, plaintiff cannot question the validity, force or effect of said judgments and proceedings in the State courts.

If we admit, for the sake of argument, that the court in bankruptcy had jurisdiction, still, under the uniform course of proceedure adopted by all courts, we maintain that the records of the judgments and proceedings in the State courts import such absolute verity, that no action had in another jurisdiction, or order made in another court, when attempted to be enforced in a district court of this State, will so operate as to suspend, much less make null and void, the judgments and orders in favor of defendant.

We maintain that, no matter what proceedings may have been commenced elsewhere, if it appear from the records of the district court that the court had jurisdiction of the case, and that the attachments were properly issued and judgments regularly entered, these judgments are absolute verities and cannot be disregarded; and that a true interpretation of the bankrupt act itself recognizes this fact. By the act it is provided that when an assignment is made, " by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings." The act itself does not dissolve the attachment; before it can be dissolved it must be ascertained that it was issued within four months next preceding the filing of the petition.

The assignment is made conclusive evidence of his right to appear in any suit for or against the bankrupt. The time for bringing suit is limited to two years. The assignee

has all the power the bankrupt had, and all his rights to appear and defend, etc. Thos. M. Isett had the right under the statute of Iowa to appear, and for defects in the proceedings in the attachment suits, have the judgments set aside. His assignee could have no greater right. He not only had the right, but it was made his duty to appear and defend, or, within the time fixed by statute, apply to have the judgment set aside. The adjudication in bankruptcy was made March 27, 1869. The suit of defendants, against Isett, was instituted February 13, 1869. *It was pending at the date of the adjudication,* and judgment was rendered before he was made assignee. When he filed his deed of assignment for record, in Muscatine county, he had legal notice that the judgments had been rendered; he could then have appeared, under the statute, and have had them opened; and, if they were in conflict with the bankrupt act, he could have had the proceedings dismissed.

At the date of the assignment, to wit, October 25, 1869, judgments had been rendered in all of the cases in controversy in this suit, save the case of Powers & Newman against said Isett, Kerr & Co., and in fact there was no attachment to be dissolved, save in the case last named. All of the others were in judgment at the date of the assignment, and said Isett, as well as plaintiff were estopped by those judgments.

Isett could not have disregarded them; could the plaintiff? It nowhere appears from the evidence that the defendants were ever notified of the proceedings in bankruptcy. It nowhere appears that Isett was a voluntary bankrupt, or that any creditor proceeded against him. All that does in fact appear is, that by some means, legal or illegal, plaintiff got an assignment in bankruptcy, and came from New York to Iowa and brought his suit, treating the action of the State court with silent contempt; and, because of the fact that he has an assignment, asks this court to hold that the records of the district and circuit courts of this

State are nullities. Could the assignment destroy the effect of the, judgments?

2. All that the bankrupt act provides for is, the dissolution of attachments issued on mesne process, within four months next preceding the filing of the petition in bankruptcy, or the commencement of the bankruptcy proceedings.

We insist that, by the terms of the bankrupt act, already quoted by us, it was the duty of the assignee to appear in the suits of defendants against said Isett, Kerr & Co., and having failed to do so, he cannot now treat the judgments of the State court as nullities. He, as well as Isett, is concluded by them. We concede that congress has the power to pass a bankrupt law that, by its operation, would divest the liens acquired by the levy of attachments; but an attachment, regularly issued, is legal and valid until dissolved. It is not vacated or made void, *ab initio*, by the commencement of proceedings in bankruptcy, but simply dissolved. All proceedings under the writ, until the same is dissolved, are regular and valid.

*In re Houseberger*, 2 Bank. Reg. 33, the State courts were courts of superior jurisdiction, and all presumptions were held to be in favor of their decision. 1 Smith's L. C. (6th Am. ed.) 991, 995, 997, 1001-2; 2 id. 834; 2 Am. L. C. (3d ed.) 733, 734; *Ex parte Christy*, 3 How. 318, 319; *Peck* v. *Jenness*, 7 id. 624, 625; *Taylor* v. *Carryl*, 20 id. 594, 595, 596, 597; *Clark* v. *Rist*, 3 McLean, 494.

Under the present bankrupt act it has been held that State courts are independent tribunals, and, as regards the United States district court, foreign tribunals every way the equal of the district court, and over which it has no supervising power.

In the case of *Hugh Campbell*, in Supplement to the Bankruptcy Register, p 37, the court says, in speaking of the conflict of jurisdiction of State and federal courts, in con-

nection with the bankrupt law: "But we cannot discover any provision in that act which limits the jurisdiction of the State courts, or confers any power on the bankrupt court to supersede their jurisdiction, or wrest property from the custody of their officers. On the contrary, it provides, in the fourteenth section, that the assignee may prosecute and defend all suits at law or in equity, in which such bankrupt is a party, in his own name, in the same manner and with the like effect as they might have been prosecuted or defended by such bankrupt. In other words, as to the estate and property of the bankrupt, the assignee is subrogated to all his rights and responsibilities. The act sends the assignee to the State court, and admits his power over him. It confers no authority on this court to restrain proceedings therein, by injunction or other process, much less to take property out of its custody or possession with a strong hand."

We direct the particular attention of the court to this case, as also to the case of *S. & M. Burns, ex parte, Wm. Burns*, p. 38 of supplement.

The case of Burns, above cited, is still stronger in our favor, as we think. On the 31st of July, 1867, he filed his petition to be declared a bankrupt. On the 18th of the same month he confessed a judgment for $10,300 on which a *fi. fa.* was issued and levy made. It was charged that the judgment was fraudulent, and, therefore, void; yet the court held that it could not be assailed in the bankrupt court, but that the assignee must resort to the State court to test its validity. The court says: "By the first section of the fourth article of the constitution of the United States, it is declared that full faith and credit shall be given, in each State, to the public acts, records and judicial proceedings of every other State; and this is equally binding on the courts of the United States."

3. The plaintiff may and no doubt will claim that our judgments are not valid. How is that to be determined?

They are the judgments of courts of general jurisdiction, whose records import absolute verity. Under the common law and the statute they had jurisdiction of the subject-matter of the suits, and under the statute of the State they had jurisdiction of the person of said Isett, and before any service was made upon him, or any order had been made requiring him to appear, the property in controversy was attached, and before an assignment was made to plaintiff, under the statutes of the State, defendants had perfected their liens by judgments regularly obtained, and yet the plaintiff, disregarding the requirements of the act of congress, fails to appear or make any efforts to set aside these judgments, and asks this court, in a collateral proceeding, to declare them null and void, and thus affirm what we claim was the erroneous ruling and decision of the district court.

We insist that no case can be found where the judgment of a court of general jurisdiction, when it appears affirmatively from the record that the subject-matter as well as the persons of the defendants were within the jurisdiction of the court, has been disregarded in a collateral proceeding. See case of *Horner* v. *Doe*, 1 Carter (Ind.) 32, 33; *Doe* v. *Smith*, 1 id. 451; *Whittaker* v. *Johnson County*, 12 Iowa, 595; *Gregg* v. *Thompson*, 17 id. 107; *Mason* v. *May*, id. 261–272.

The bankrupt law, section 20, as arranged by Bump, saves to creditors liens on real estate.

Under the statutes of Iowa, an attachment levy creates a lien; a judgment is a lien.

Before the assignment was made defendants had recovered judgment. Before any order was made affecting Isett, the attachment lien was created. We insist that, under the law, the rights of the parties were fixed by the action of the State courts before an assignment, and plaintiff, as assignee, could take only subject to the liens of defendants, and if he failed to assert his rights in the State courts, but permitted sales to be made under the judgment liens and

executions, he lost all claim he might have had as assignee, both at law and in equity.

" The bankrupt act does not discourage diligence in the collection of debts. Creditors who have obtained a lien, by a legitimate effort to collect an honest debt, must be permitted to enjoy the advantages gained by such dilligence." *In re W. W. Kerr*, 2 Bankruptcy Register, 124; *In the matter of Francis Schnepf*, 7 Am. Law Reg. 204; *In the matter of Hugh Campbell*, id. 100; *In re Wm. Burns*, id. 105.

A levy that is good and creates a valid lien under the *ton*, 4 id. 1; Bump's Law and Practice in Bankruptcy, State laws will be held valid in the bankrupt court. *In re Clark*, 3 Bankruptcy Register, 123; *Samson* v. *Bur-* 3d ed., 113, 114, 115, 283; *Hendron* v. *Howard*, 9 Wallace, 664; *Davis* v. *Carpenter*, 2 Bank. Reg. 125; *Bates* v. *Tappan*, 3 id. 159; *Bowman* v. *Harding*, 4 id. 5; *In re Kerr*, 2 id. 124; Bump's Law and Practice in Bankruptcy, 3d ed., pp. 176, 177, 178; *Armstrong, assignee,* v. *Rickey Bros.*, 2 Bank. Reg. 150; *Clark* v. *Binninger*, 9 Am. Law Reg. 204; *United States* v. *The Superior Court*, 9 id. 297; *Sedgwick* v. *Minck*, 1 Bank. Reg. 204; *Hawkins' Appeal*, 8 Am. Law Reg. 205, and note on p. 208; *Ex parte Donaldson*, 7 id. 213; *In re Francis Schnepf*, 7 id. 204, and note on p. 206.

4. We claim that, in fact, our attachments were levied before any proceedings in bankruptcy were had against said Isett; and, therefore, the jurisdiction of the State court was exclusive. That, in fact, no such proceedings were had against said Isett, at any time, as to affect our attachments, judgments, executions, or deeds. Section 38 of the act, as given in " Bump's Bankruptcy Proceedings," provides: " That the filing of a petition for adjudication in bankruptcy, either by a debtor in his own behalf, or by any creditor, against a debtor, upon which an order may be issued by the court or by a register, in the manner pro-

vided in section four, shall be deemed and taken to be the commencement of proceedings in bankruptcy under this act." The order referred to can only mean the order adjudicating the debtor a bankrupt. *In re Patterson*, 6 I. R. R. 165.

In this case, Isett did not petition, therefore the date cannot be fixed at the time he, as a debtor, petitioned in his own behalf. No creditor petitioned against him, therefore no date can be fixed for the commencement of the proceedings against him. Up to the present time neither he, in his own behalf, or any creditor of his, or of the firm, has filed any petition against him. The act being summary in its nature, and in derogation of the common law, must receive a strict construction, and cannot be enlarged so as to include cases not provided for. If Isett was ever legally in the court of bankruptcy, it was by virtue of the petition filed by his partners as provided in section 36 of the act. This section provides, that upon the petition of the partners, or on the petition of any creditor of the *partners*, a warrant shall issue as provided, etc. The record shows that Isett did not join in the petition with his partners, consequently no adjudication could be made until notice, as in cases of involuntary bankruptcy, had been issued and served upon him. Section 40 of the act provided for this notice. Rule 18 of general orders, as made by the supreme court, fixes this notice, and the manner of service of the orders to appear, and in the notes to rules it is decided that the warrant or order for the seizure of property only applies to involuntary cases. The order to Isett to appear was made on the 27th day of February, 1869. Prior to this date, the proceedings were in no sense against him, nor was he adjudicated a bankrupt until the 27th of March, 1869. Under the act, the proceedings against Isett are of the same nature as in involuntary cases. The act of bankruptcy committed by Isett (if any ever was committed) was committed on or before

August 13, 1868. The order for his appearance was dated February 27, 1869, more than six months after the commission of the act of bankruptcy. By section 39 of the act, it is expressly provided, that involuntary proceedings shall be commenced within six months of the time of the commission of the act of bankruptcy. Isett being treated as a debtor petitioned against, the right to bring him before the bankruptcy court by compulsory process had expired by limitation before any proceedings were had against him, and nothing but a forced construction of the act, or a disregard of its positive requirements, will give any color of legality to the bankruptcy proceedings. Certainly these proceedings are not of such character as to override the judgments and orders of the State courts.

We insist that the district court erred in holding that the judgments and proceedings in the State courts were void.

5. We insist that the action of the bankruptcy court, so far as it attempted to dispose of said Isett or his property, was without jurisdiction; and that the pretended assignment of his effects was and is absolutely void.

Proceedings in bankruptcy are special; the statute alone controls and regulates them; they are violent and summary in their nature; the statute must receive a strict construction, and the record must show a substantial compliance with the requirements of the statute.

The proceedings being special, in a court of limited and special jurisdiction, all that the statute requires to be done, in order to obtain jurisdiction of the case, must be done substantially in the manner directed by statute; and in a collateral proceeding, the fact that the court acted without jurisdiction may be shown, and when shown, will defeat the proceeding and render void all that was done in the case.

The court in bankruptcy is one of limited and special jurisdiction, both as to the manner of acquiring jurisdiction of the subject-matter and of the person of the alleged bankrupt. If the bankruptcy court had not acquired juris-

diction, there were no proceedings in bankruptcy in the case of Isett.

Territorially, the jurisdiction of the bankruptcy court was confined to the southern district of New York. This is fixed by the first section of the bankrupt act, and in addition to the provisions of the act, we may state the proposition broadly, that neither the circuit or district courts of the United States can acquire jurisdiction over the person or property of a party, by service made out of the district. 1 Brightley's Dig. 230, §§ 11, 13, 15; *Tolland* v. *Sprague*, 12 Pet. 300–327.

The only territorial jurisdiction given outside of the district is respecting the property of the bankrupt after an adjudication. The right to adjudicate must have been acquired by personal service, or by copy left at the last place of residence in the district, or by publication. This is the positive statute requirement. It cannot be disregarded. The return of service shows that it was made on Isett in Jersey City, in the State of New Jersey — out of the jurisdiction of said court. We deny that there was any legal service upon Isett, because of the fact that he was not served in the district in which the proceedings were pending.

Not only must the service be made within the district, but it must be made by the U. S. marshal, or by a messenger, as provided by statute. 1 Brightley's Dig., p. 793, §§ 5, 6, 7, 8, 9, 10, 11, and note *b*; id. 595, §§ 1, 2; id. 212, § 59, and note *b*; id. 25, § 2; 2 id. (2d ed.) 511, §§ 1, 2, 3; p. 408, § 1; p. 79, § 20; p. 96, § 90.

The above recited statutes clearly fix and name the person or officer who can legally serve any process issuing from any United States court. The general orders in bankruptcy, numbers 2 and 18, fix what is process of the court, in bankruptcy, and who can serve it.

2 Bouv. L. Dict., 387, also defines what the word "process" means: It is any order issuing from a court to

bring the defendant into court. Any writ or order to a defendant, or respondent, requiring him' to appear before the court, or judge, issued by the court with its seal, is a " process," within the letter and spirit of the statutes, and in accordance with the uniform decision and practice of all courts. This process can only be served by an officer of the court, a marshal or a messenger.

In proof of this, we refer to Bump's Law and Prac. in Bankruptcy, 3d ed., p. 36: "After the order to show cause is issued, a copy of the same and of the petition are delivered to the marshal to be served upon the debtor." " *This service may be made by the marshal or his deputies.*" § 48, p. 449, same edition.

If the proper service has been made, and the debtor fails to appear, upon the return day, a default may be taken. Id. 42.

When there has been due and legal service made, and the debtor makes default, an adjudication can be made.

We insist that, if no legal service was made, then Isett was not required to appear, and that all the further action of the court was *coram non judice*, and void.

The general orders (2 and 18, above cited) require that " all process, summons and subpoenas shall issue out of the court, under the seal thereof, and be tested by the clerk, etc.; and that, in case of a partner refusing to join, the process must be served in the same manner as upon an involuntary bankrupt." Form 57, 548, gives the order to the debtor to appear, attested as a summons or a warrant, with the seal of the court. The marshal himself cannot appoint a deputy to serve this order. 3d ed. Bump, 25.

All forms in bankruptcy are to be made by the supreme court, and this court can neither add to or take from the requirements of the statute. § 10 of act, 266, 267, Bump, (3d ed.); *In re Glasser*, 1 B. R. 73.

The bankruptcy court has held that an order of court,

supplemental to execution, was a "process." *Brock* v. *Hoppock*, 2 id. 2.

The return of the *marshal* of service is only *prima facie* evidence of due service. *In re Pulver*, B. R. Sup. 11.

6. It will be claimed that, notwithstanding all of the above defects in the proceedings in bankruptcy, yet, the said Isett being a member of the firm of Isett, Kerr & Co., the acts of his partners gave the court jurisdiction of him, and drew him into the bankruptcy court, without any legal notice to him. This we deny. If Isett neither resided or carried on business in the southern district of New York, in no event could the court in that district take jurisdiction over his person or individual property, until after proceedings commenced by or against him, in the district where he resided.

This is in accordance with the act, the rules or orders of the supreme court, and the decisions of the bankruptcy courts. Section 36 of the act (3d ed. Bump, 415) provides : That when partners shall be adjudged bankrupt a warrant shall issue as provided by this act, etc. ; and sections 39, 40, 41 show the manner of procedure in case of involuntary bankruptcy ; and section 36 provides that, when a member of a firm refuses to join, the proceedings must be the same as in case of involuntary proceedings.

Form No. 2 (Bump, 505) shows what must be averred in the petition for the discharge of a firm. It must state that the petitioners are residents within the district in which the petition is filed, or, that they have carried on business in said district for six months next preceding the filing of said petition, or for the longest period during said six months, and must allege the insolvency of petitioners, etc.

An examination of the petition filed by Kerr & Farr will show that they had done business in said district but six weeks within the limited time ; that they place their residence in said district, as required by statute ; that there is no averment in said petition that Isett ever resided in

New York, or, that he had carried on business there after August 13, 1868; there is no averment that said Isett is insolvent, nor are there any of the averments necessary for an involuntary proceeding against him. The petition contains no statement of an act of bankruptcy on the part of the firm. It simply avers that the members of said partnership (the petitioning members) are unable to pay all their debts in full. They do not, nor can they, swear that Isett is unable to pay all of his debts, including the firm debts, in full. The only averment upon which it would be possible to take jurisdiction of Isett is, the averment that he refuses to unite with them in petitioning for a discharge. The prayer in the petition is peculiar. The form requires that they ask their discharge. In the petition they pray that they and the said Thos. M. Isett may have a certificate of discharge. Isett has not asked a discharge; the applicants do not allege that he is insolvent; they allege that he refuses to join with them, and close by asking an order for him to appear and show cause, etc.

We insist that the petition does not state facts sufficient to give the court, in the southern district of New York, jurisdiction of Isett, or his property, in any court, save in one where the forms and substance of law are disregarded, as they seem to be in the city of New York.

The petition does not even pray that the firm be declared bankrupt; which is certainly requisite as a jurisdictional fact when a firm applies. If the firm does not unite, then only those who do petition could be discharged; and an assignment attempted to be made of the individual assets of a member of a firm, when there is no averment of his being a bankrupt, no averment that he is a member of a bankrupt firm, and no legal prayer for his discharge, is a usurpation. of authority; and the assignee is a mere trespasser, when he takes possession of the property of the non-joining member of the firm.

Section 11 of the act (Bump, 267) provides: That

if the debtor "shall apply by petition, addressed to the judge of the judicial district in which such debtor has resided or carried on business, for the six months next immediately preceding the time of filing such petition, or for the longest period during such six months, setting forth his place of residence, his inability to pay all his debts in full," etc., thus showing what the petition shall contain in a voluntary application. We have already shown what it must contain in an involuntary case; and that, when a member of a firm refuses to join, he is treated as a debtor petitioned against, and have argued that, from the wording of the act, the requirements of the general rules and orders, and the provisions of the forms, the court had no jurisdiction of either the person or property of Isett.

The last paragraph of section 36 provides that, "if such copartners reside in different districts, that court in which the petition is first filed shall retain jurisdiction over the case." Bump, 415.

In the text of same work (Bump, 52), the author says: "If the partners have carried on the partnership business in any district, during any part of such six months, it may be filed in such district, *provided the district is the one in which they have carried on businees for the longest period during such six months*, even though all the partners reside in other districts." "If the partners have not resided or carried on business in the same district during such six months, there must be separate petitions filed in the several different districts in which they have so resided."

This is the provision of the act; and when the several partners have filed their separate petitions in the different districts in which they reside, the court in which, in point of time, the first petition was filed, would take and retain jurisdiction over all of the partners. In no other way can the different provisions of the act be made to harmonize. It is strictly in accordance with the requirements of general order No. 16. Bump, 486. It provides for disposing of

the effects of bankrupts residing in different districts, and makes perfect harmony between the different provisions of the act.

The above position is fully sustained in the following cases: *In re Foster*, 3 B. R. 57; *In re Smith*, id. 15; *In re Pankard*, 1 id. 51; *In re Boylan*, B. R. Sup. 1.

If there are partnership assets and partnership debts, the assignee may file a petition against the member of the firm in the proper district, and thus get an adjudication of the firm debts and assets. *In re Grady*, 3 B. R. 54.

The petition must be filed either in the district where the debtor resides or carries on business. *In re Fogerty*, 4 A. L. Rev. 163; *In re Waite & Crocker*, 1 B. R. 84; *In re Frear*, 1 id. 201; *In re Abbe*, 2 id. 26.

7. The effect of the assignment and record of the bankruptcy court. It is claimed by the plaintiff that the assignment is conclusive evidence, and that we are estopped by it, as well as by the record of the bankruptcy court.

We controvert this proposition.

The position assumed by plaintiff is we have an assignment, and a record. No matter if the assignment is forged, it purports to be a certified copy of a genuine one, and the statute says that you cannot even question its genuineness or validity, because the act says that if we have an assignment you are concluded by it.

We admit that a genuine and legal assignment is conclusive evidence of his right to sue for any property he claims as the property of Isett, but we deny that the assignment is such evidence of title as will conclude all other claimants to the same property. A deed will not estop inquiry. A judgment of a court of general juris diction is not conclusive, unless it had the right to decide, and the question of jurisdiction is always open to investiga tion. *McDaniel* v. *King*, 5 Cush. 472, and following pages.

In 3d edition of Bump, 6, the author says: "If the court has no jurisdiction, the proceedings will be a nullity.

In such case, any creditor may, on filing a petition for that purpose, have the proceedings discontinued at any time; or may defeat the application for a discharge, by showing that the court had no jurisdiction over the case; or may avoid the effect of a discharge when granted, by a plea to the jurisdiction of the court that gave it." *In re Penn*, 3 B. R. 145.

The assignee cannot claim that the assignment to him is of greater sanctity than all of the other proceedings.

Upon this point we refer the court to authorities cited under our first point, viz. : The jurisdiction of State courts.

The federal courts are all courts of limited jurisdiction; limited by the constitution and statutes of the United States; all the common-law jurisdiction they possess, they derive from the statutes.

*Richmond & Carskaddon*, and *Charles A. Peabody*, of New York, for the appellee:

I. The assignment of the register to the plaintiff is made by the statute conclusive evidence of his title to the property, late of the bankrupt, and of his right to sue for and recover the same.

The assignment read in evidence was conclusive on this point and cannot be questioned. The language of the act is not to be misunderstood.

Section 14. The last clause provides: " That the record of the assignment, or a duly certified copy of it, shall be evidence of it in all courts."

" A duly certified copy thereof shall be evidence of it in all courts." This is express, and relieves of all doubt.

Another clause of this same section (14) provides, that " a copy duly certified by a clerk of the court, under the seal thereof, of the assignment by  *  *  *  *  register  *  *  *  to him as assignee, shall be *conclusive* evidence of his title as such assignee, to take, hold, sue for and recover property of the bankrupt."

Stuart v. Hines & Eames.

But the effect is by no means left to this declaration.

Section 16 provides, in different terms, for the effect of such evidence in a case of this kind, *i. e.*, a case "prosecuted by the assignee," as this confessedly is.

Section 16, last clause: "In cases prosecuted by the assignee, a certified copy of the assignment, made to him by the judge or register, shall be *conclusive* evidence of his authority to sue."

Now, this is a case "prosecuted" by the assignee, in form as well as effect. He might be said to be prosecuting his rights, indeed, if he were a defendant; but in such a case as this the objection made is to the "authority" of the assignee "to sue," that is, to prosecute. It follows that, in this case, the certified copy is conclusive evidence — if it would not be so in a case where he was prosecuting his rights as defendant.

This is so plain and unquestionable that it is doubted if its effect has ever been disputed.

The reason for making the assignment, properly certified, conclusive evidence, is plain. It was to avoid the necessity of stating in a pleading and proving on a trial all the facts which were necessary to give the court jurisdiction. That would otherwise have been necessary to the assignee, in every case, and would have imposed great labor and expense on the estate, and on every one obliged to claim under the assignment. That was the case under the former bankrupt law of 1842. Those of us who were on the stage then, and subsequently, can certify — and some of us feelingly — to that effect.

And here the argument of appellee might well terminate.

II. But supposing, for the sake of argument, that the assignment was not conclusive evidence of the plaintiff's right, and, supposing further, that it could be attacked collaterally, as in this proceeding, both which presumptions are violently contrary to law, still it is wholly unimpeached by any pleading or evidence in this case.

III. But much more may be said than that the right of the plaintiff under the assignment is not impeached or invalidated. It is positively established and sustained by the evidence of the defendants themselves in this very case.

1. The evidence of the defendant shows proceedings pending in the U. S. district court for the southern district of New York, in which the assignment might have been properly made. 2. It shows a petition filed by Kerr and Farr, the partners of Isett, which constitutes the basis of the proceedings in which the assignment was afterward made. 3. The petition states all facts necessary to give jurisdiction to the court, to wit: " That the petitioners have resided six months next immediately preceding the filing of the petition at the city of New York. (Sec. 11 of act.) 4. The facts stated in the petition *are* wholly without disproof or contradiction from any source.

(*a.*) It is not disproved, or even denied, in the proceeding in bankruptcy in which it was made.

(*b.*) It is not disproved or denied in the proceedings in this case, where the question is to be tried. It is, therefore, to be taken to be true. It is verity for the purposes of this suit. All that was necessary to give that court jurisdiction is admitted of record in that proceeding, and also in this suit. Yea, more: The evidence proving it is introduced by the defendants themselves.·

The jurisdiction of the court being established, the decision — the adjudication — is conclusive until reversed.

The validity or correctness of its decision cannot be questioned in this proceeding. Nothing is better settled than that such an adjudication cannot be assailed collaterally.

Section 14 requires an assignment to be made to the assignee by the judge or register, and fixes the effect of it. He " shall assign and convey to the assignee all the

estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto." This section also provides as to the effect of that assignment. It enacts as follows, that "such assignment shall relate back to the commencement of said proceedings in bankruptcy, *and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee,* although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings."

IV. Service of the order to show cause outside the district where the proceeding was pending was good. Where a proceeding in bankruptcy is pending in a district other than that in which the bankrupt resides, the law expressly provides that service may be made out of the district where the proceeding is pending.

(1) It provides that it may be made by leaving a copy at his last or usual place of abode. (2) It also provides that proceedings in bankruptcy may be had in a district other than that of the bankrupt's abode. (3) It is inevitable, therefore, that the law expressly provides for service outside the district in which the proceeding is pending.

See the following provisions of the bankrupt act:

Section 11. "If any person residing within the United States * * * * shall apply by petition, addressed to the judge of the district in which said debtor has resided or carried on business for the six months next immediately preceding the time of filing said petition, or for the longest period during said six months, setting forth his inability to pay * * * * the filing of such petition shall be an act of bankruptcy, and such petitioner shall be declared bankrupt."

Section 36. "When two or more persons, who are partners in trade, shall be adjudged bankrupt, either on the

petition of such partners, or any one of them, or on the petition of any creditor of the partners, * * * . If such partners reside in different districts, that court in which the petition is first filed shall retain exclusive jurisdiction over the case."

When a petition is filed to have a firm declared bankrupt, if all members do not join, or consent to it, notice of the filing must be given to such as do not join in or assent to it, as if the proceedings were on an involuntary petition against the members of the firm. Until this is done the register has no authority to make an adjudication in regard to the bankruptcy of the firm. *In re Lewis*, 1 B. R. 19; *In re Crawford*, id. 51.

Section 40. "Upon filing petition authorized by section 39, being petition in involuntary bankruptcy, * * * the court shall direct the entry of an order requiring the debtor to appear and show cause why the prayer of the petition should not be granted. * * * * A copy of the petition and such order * * * * shall be served on such debtor, by delivering the same to him personally, or leaving the same at *his last or usual place of abode.*"

General orders in bankruptcy, No. 16. In case two or more petitions shall be filed against the same individual, in different districts, the first hearing shall be had in the district in which the debtor has his domicile. * * * * In case two or more petitions * . * * shall be filed in different districts by different members of the same copartnership, the court in which the petition is first filed, having jurisdiction, shall take and retain jurisdiction over all proceedings until the same shall be closed.

Under section 11 of the bankrupt act, a person having a right to be heard under the act may apply by petition, * * * * stating his desire to obtain the benefit. His petition shall be addressed to one of the following judges:

" 1st. To the judge of the judicial district in which such debtor has resided * * * for six months next imme-

diately preceding the time of filing such petition, or for the longest period during such six months; or, 2d. To the judge of the judicial district in which such debtor has * * * * carried on business for the six months next immediately preceding the time of filing such petition, or for the longest period during such six months."

Now, where the bankrupt has resided six months in one district, and has carried on business for six months in another, he may address his petition to the judge of either of those district courts, at his pleasure.

Where he has resided for six months in one district, and carried on business for six months in more than one other district, he may address his petition either to the judge of the district in which he has so resided, or to the judge of either of the other districts in which he has so carried on business for the six months * * * * at his pleasure. § 11.

Where a partner, who has refused to join with the applicant in his petition, resides in any other district than the one in which the petition is filed, the law provides in terms for a service of the order to show cause, outside the district in which the petition is filed and the proceeding is pending. For, it provides that the partner not uniting in the application may be served by leaving the same, i. e., the copy of the petition and order, at his last or usual place of abode. Whenever this is not in the district where the petition is filed, it is a service outside the territory of that district.

There may be, and in many cases there are, several districts in which the petitioner has carried on business six months, immediately preceding the time of filing said petition, and, in that case, he may file in either of those districts, and service, by leaving the papers at his last or usual place of abode, would surely not be in any, save one of that number, and might not be in either; for he cannot have a residence or place of abode in more than one of these districts, and may have had his last or usual place of abode

outside either of the districts in which he has done business for said six months.

So, if he lived in the district where the petition was filed when the petitioner filed it, but removed to another afterward, and before the service was made, his last and usual place of abode would be at the place where he lived at the time of service, and, in that case, the service would be made out of the district in which the petition was filed.

Cases of each of the kinds above mentioned are not likely to be of rare occurrence. If service must be made within the district, the debtor proceeded against involuntarily has only to watch the filing of the petition and remove before an order can be made, and then, repeating that process, forever avoid service and defeat the act.

Section 11. "Any person residing within the jurisdiction of the United States, owing debts * * * * may apply for and receive the benefits of this act."

No one else can so apply for them. No one, who has not a residence within the United States, can have the benefit of this act.

If any person residing within the jurisdiction of the United States may apply at the place of his residence, not only, but at other places also, why should not service on him be good if the petition be filed by his partner, and not by him, when made at places other than that of his application, namely : at the place of his residence, outside of the district of the application ?

When the application is made at a place other than that of the residence of the party not joining in the application, or, the party not joining in the application removes from the place of the application, after it is made and before service is made on him, there is no reason to suppose that service can ever be made in the district of the application personally, and, if it cannot be made outside that district, it cannot probably be made at all personally. The statute, therefore, provides that service may be made by leaving a

copy of the order at his last or usual place of abode of the party served, even though that be out of the district in which the petition is filed, as has been shown.

Shall it be contended that personal service cannot be made at the place where service may be made constructively, to wit, at the place of the partner's "last or usual place of abode," if that happen to be outside the district of the petition filed?

Surely, actual personal service by delivery of the papers to him outside the district, is as good, as well calculated to give notice as the constructive service given by leaving the paper at the same place: that is, leaving it at his "last and usual place of abode"—itself equally outside the district.

In one case the notice is good, because the party seems likely, in the ordinary course of events, to receive it within such reasonable time as will enable him to act upon it.

In the other case, he is known and proved to have received it at the time fixed by the proof, at a place no further distant than in the case of substituted service, and indeed at the same place.

The words, " in said district," as used in the order to show cause, would not, if they were allowed any legal effect, limit or apply to the clause, "by delivering the same to him personally." Those words occur in connection with the other clause providing for another mode of service, namely, "by leaving the same at his last usual place of abode," and would only limit the place of that mode of service to the district.

By the terms of the order as it now reads, personal service may be made anywhere, even if effect be given to that clause, and the service "by leaving the same at his last usual place of abode" alone is limited to the district.

But the whole clause is mere surplusage, and should not

be there at all. It does not occur in the bankrupt act at all in connection with either mode of service.

It is a mere clerical error, and to be disregarded. The statute makes no such limitation and is controlling. It authorizes personal service anywhere, and therefore service anywhere, whether within or without the district, is good.

Bankrupt act, section 40. "By delivering the same to him personally or leaving the same at his last or usual place of abode," is the exact language of the statute.

The district judge of the southern district of New York has often stricken it out of orders when it has been inserted, as in this case, by error of the attorney's clerk drawing the paper, and has always done so when he has observed it, it is believed.

In the district where this occurred, more bankruptcy litigation has occurred, probably, than in almost any other of the United States, and in the cases occurring in that city, embracing immense interests, and large numbers of cases in which service must be made out of the district, if personal service be made at all, the question must have been before him often.

V. If service be made outside the district, it must be made by some one else than the marshal, for it cannot be made by him as marshal. The marshal's official power is limited to his district. Act of September 24, 1789, § 27, called Judiciary Act.

It follows, that if service outside the district is legal, service by an unofficial person, as in this case, is correct, and it could only be made in that manner.

VI. The act, section 40, provides "where the debtor cannot be found, or his place of residence ascertained," for service "by publication in such manner as the court may direct." It provides for such substituted service only in that case. This is plainly not such a case, for the debtor *could be found*, as is shown by the fact that he was found and served.

If this be not such a case, then there is no provision for this case, if service personal outside the district be not good, and there is no power in the court to enforce the law at all in such a case as this; a conclusion not to be contemplated for a moment.

This order must be served outside the district of the court, not only in this case, but in a large class of cases, as has been shown, or it cannot be served at all. Outside the district of the court, it must be served by some one else than the marshal, or it cannot be served at all, as has been shown.

VII. The service of the order to show cause was not a jurisdictional fact. The jurisdiction was obtained, as has been shown, by the petition filed by Kerr and Farr, members of the copartnership.

The order to show cause was in no sense process of court. It was an order made in the progress of a proceeding — it was notice to the respondent, authorized by and having the sanction of the court. It had none of the attributes of process of court.

1. Process of the court is addressed to the marshal of the district. 2. It issues in the name of the president of the United States. 3. It is tested in the name of the judge of the court. 4. It is made returnable before the judge of the district court. 5. It is made returnable on a day stated. Act of Congress, Sept. 24, 1789 — Judiciary act. Conkling's Treatise, 3d ed., 300. :

Process to be executed by the marshal is, and it is submitted, must be, addressed to him. It is the mandate of the court to him, and gives him authority to execute it. It is plain this is not in the form of, nor has it the substance of process, and the executive officer of the court cannot, as such, execute it. An order to show cause is never served by a marshal or sheriff, by the rules of practice where such orders are in use.

In some of the States, and in this State among others, an order to show cause is used as a mode of getting a joint defendant, a partner, into court, to be bound by the adjudication in the case, on a service originally made on the other partner only. In such case it is the only notice served on him, and on proof of service of it, judgment is entered against him by default. Will any one claim that in such a case it is jurisdictional process? or that it must be served by the sheriff?

In such a case it is not served by the sheriff or executive officer of the court. This is not the case either in this State or any other, it is believed. It seems to answer very much the purpose of process, but it is never served by the sheriff in practice, and could not be served by him officially. How would a sheriff's return of service look on such a paper. The form of the instrument determines this more perhaps than the substance. It is not addressed to him, and he does not serve it. He serves what he is commanded by the court to serve, and that only as a general rule. He is the official servant of the court. So is the marshal of his court. In its process the court commands and its servant obeys.

VIII. This service has been adjudged to be good and sufficient, and this adjudication is conclusive on all persons.

"And on the 27th day of February, A. D. 1869, an order was entered in this court, that the said respondent, Thomas M. Isett, appear before the court on the 27th day of March, 1869, and show cause why the prayer of the petitioners should not be granted, *which order was duly served upon said respondent, Thomas M. Isett, on the 11th day of March, A. D.* 1869," says the court.

This is its language in the order solemnly adjudicating said Isett a bankrupt.

It is conclusive in this case.

The correctness of this decision cannot be questioned in this proceeding.

It cannot be attacked collaterally as in this case.

Nothing is better settled than that such an adjudication cannot be attacked collaterally. *Warden* v. *Eichbaum*, 3 Grant (Penn.), 42; *Banks* v. *Mumford*, id. 232; *Bonsall* v. *Isett*, 14 Iowa (6 With.), 309; *Christmas* v. *Russell*, 5 Wall. 290; *Robert* v. *Hodges*, 1 Green (N. J.), 299; *Jordan* v. *Faircloth*, 3 Georgia, 47.

" When a matter, over which some other court is allowed to have exclusive jurisdiction, comes in question — whether directly or indirectly — and the judgment of that court is offered in evidence as proof of the matter, it must necessarily be *conclusive;* implicit credit must be given a court so constituted, while its judgment is unreversed and in full force." 2 Phillip's Ev. 5 and 6; 2 Abbott's Nat'l Dig. 550, §§ 43 to 50, inclusive; 1 Greenleaf's Ev. §§ 15 and 16; *Gelston* v. *Hoyt*, 3 Wheat. 245; *The Mary*, 9 Cranch, 142; *Wright* v. *Watkins et al.*, 2 G. Greene, 547; *Magoon* v. *Warfield*, 3 id. 293.

An adjudication in bankruptcy is in the nature of a proceeding *in rem* — to which all the world are parties. *Shawhan* v. *Wherrit*, 7 How. 627; 2 Smith's Leading Cases, 515, 522; *Smith* v. *Brinkerhoff*, 2 Sel. 305; *Gregg* v. *Thompson*, 17 Iowa, 108; *Bonsall* v. *Isett*, 14 id. 309; *Morrow* v. *Weed*, 4 id. 77; *Ballinger* v. *Tarbell*, 16 id. 491; *Shawhan et al.* v. *Loffer*, 24 id. 217.

IX. The first division of appellant's argument is not very clearly understood. It seems to be devoted to something wholly unreal or existing only in misconception.

The judgments and doings of the court in which the judgments were recovered on which the property in controversy was sold are not in any way brought in question. Those judgments were just as they should have been, appellee supposes, and no one contests or doubts their

entire correctness. No such question is presented here, or was presented in the court below. The remarks about "suspending or making null and void" those judgments are wholly inappropriate.

Those judgments adjudged the amount due to the plaintiffs therein respectively.

With those judgments the plaintiff finds no fault.

Those judgments were, and are, and ever will be valid, effectual and conclusive, we suppose, on all the facts they adjudicate between the parties to them, respectively, and their privies; and that is all that can be claimed for any judgment.

The questions presented by this record in these cases now before this court were none of them before that court in those cases.

The question presented there was, whether the defendant Isett was indebted to the plaintiffs therein, and if so, in what sums.

The question presented here is (admitting the indebtment as adjudicated there), whether the property in question shall go to pay those judgments exclusively, or shall go to the plaintiff to be distributed among all the creditors of the debtor Isett, in proportion to the amount of their debts, respectively.

The plaintiff had no objection, and has none now to any thing adjudged by that court.

The counsel says he should have appeared and urged his rights in those cases.

That was impossible for several reasons:

1. That court had no question before it in which the plaintiff here claims any interest.

2. Those suits were prosecuted to judgment before any assignee was appointed, when the property had no real custodian, except the court in bankruptcy. His claim here is on behalf of the creditors of Isett, that the property in question belongs to him as assignee, to be distributed

among the creditors of Isett, generally. This is the first opportunity he has had of asserting this claim. It could not have been asserted in those suits where no such questions were or could have been raised.

The whole argument of the appellant in that respect, it is submitted, is based on misconception.

At the commencement of proceedings in bankruptcy, by the plain provisions of the law, the title of Isett was put in abeyance.

By the adjudication in bankruptcy the title to his property passed from him entirely.

By the appointment of the plaintiff assignee, it rested in him.

What has this or any thing presented in these suits to do with the judgments recovered against Isett or with the suits in which those judgments were recovered ?

Those judgments are valid against Isett, and will ever remain so until they are paid. They will be good against any property he had at the time which the assignee may not be able to reach, and all agree that he had ample to pay all his debts; and, also, against any property he may have acquired since the application in bankruptcy, and any he may acquire hereafter, and it is said he has ample large possessions even now in a country adjacent to the United States.

The suits by defendants were commenced and judgments were recovered after proceedings in bankruptcy were commenced and when plaintiff had constructive and legal, and, for aught we know, had actual notice of these proceedings. They might have had it on inquiry at the place of his business and residence, where their debts were incurred by him.

This bankrupt act seeks to distribute the estate of bankrupts among the creditors of the bankrupt in proportion to the indebtedness to each. The defendants here seek,

each, to have his debt paid in full, to the exclusion of all other creditors.

The claim of the plaintiff is so manifestly equitable, and that of the defendants so manifestly otherwise, that no argument is needed to establish the merits of one or the demerits of the other.

DAY, Ch. J.— On and prior to August 13, 1868, Thomas H. Isett, John Kerr and Watson B. Farr were copartners under the name of Isett, Kerr & Co., doing business as bankers and brokers at the city of New York, in the southern federal judicial district of New York. On the 31st of December, 1868, Kerr and Farr filed their petition in bankruptcy in the United States district court of that district, asking that they and their copartner, Isett, be declared bankrupts, alleging that Isett refused to join in the petition with them. On the 27th of March, 1869, Isett, Kerr and Farr were adjudged bankrupts. On the 25th of October, 1869, the plaintiff, John M. Stuart, was· regularly chosen to be assignee of the estate and effects of the said bankrupts. On the 28th day of October, 1869, the proper register in bankruptcy executed a deed of assignment, conveying to said John M. Stuart all the estate, real and personal, of the said Thomas M. Isett, or in which he was interested on the 31st day of December, 1868. This deed was filed for record in Muscatine county, Iowa, on the 9th day of November, 1869.

Thomas M. Isett owned the real estate in controversy, situated in Muscatine county, Iowa. Hines & Eames caused an attachment to be levied on said property, on the 13th day of February, 1869. They obtained judgment on the 14th day of June, 1869. The property was purchased by Jacob Butler, as trustee of Hines & Eames, on the 25th of June, 1870. Streeter & Co. levied an attachment upon the same lands, March 11, 1869, and obtained

*1. BANKRUPTCY PROCEEDINGS: jurisdiction of State Courts.*

their judgment in September, 1869. .The Farmers' Savings Association attached March 26, 1869, and obtained judgment in September, 1869. The abstract does not show that any sale has taken place under these judgments. The attachment of Powers & Newman was levied May 3, 1869. They have not obtained judgment.

Appellants discuss the points made in their 'assignment of errors, under two general heads:

1. Did the judgment of the State courts estop the plaintiff from proceedings in this suit?

2. Had the bankruptcy court jurisdiction over either the person or property of Thomas M. Isett?

We will pursue the same order in our consideration of the case.

I. *As to the effect of the judgments* v. *Isett, Kerr & Co. in the Muscatine district and circuit courts.* Appellants claim that by these proceedings, valid and subsisting liens have been created in favor of the defendants. In support of their position they cite numerous authorities, all of which we have examined with a care commensurate with the importance of the questions involved in this appeal. None of them, in our opinion, support the position they are cited to sustain.

*In re Houseberger*, 2 Bank. Reg. 33, is as follows: An attachment was levied on the 8th of June, and the petition in bankruptcy was filed on the 10th of June. The assignee claimed the attached property of the sheriff, who refused to deliver it until his fees and charges for keeping were paid. It was held that the attachment was dissolved as of the date of filing the petition in bankruptcy; but that, having been issued regularly, the *sheriff* had a lien upon the attached property for his fees.

*In re Hugh Campbell*, Supplement, 1 Bankrupt Reg. page 37, is a case in which judgments had been rendered, in the State court of Pennsylvania, against the party sought to be declared a bankrupt, prior to the period when

the bankrupt law went into operation. Upon final process a large amount had been realized by sale of property, and the money brought into the State court for distribution. It was held by McCANDLESS, J., that the court in bankruptcy could not restrain the plaintiffs in the judgments, and the courts of the State and their executive officers from further proceedings, with the design to bring all the property of the bankrupt into the United States district court, for division among creditors.

*In re S. and M. Burns, ex parte Wm. Burns*, Supplement, Bank. Reg., page 38, Burns filed his petition in bankruptcy on the 31st of July, 1867, and was duly adjudged a bankrupt. On the 18th day of July, 1867, thirteen days before the filing of the petition, the First National Bank of Clarion, a creditor of the firm of which the bankrupt was a partner, obtained judgment on warrant of attorney, for the sum of $10,300. A *fi. fa.* was issued, and a levy made *prior* to the commencement of bankruptcy proceedings. It was held that the judgment could not be assailed in the bankrupt court.

*In re W. W. Kerr*, 2 Bank. Reg., p. 124, judgment was obtained and levy made upon the property of the bankrupt, seven days prior to the filing the petition in bankruptcy. Action was brought by the assignee of Kerr, petitioning the court to declare the levy void, and for an order directing the sheriff to deliver the goods levied upon to the assignee. The attached property having been, upon an order of the bankruptcy court, delivered to the assignee, the court ordered the assignee to pay the amount of said judgment, interest and costs, and that the balance of the proceeds of the attached property be considered and dealt with as part of the estate of the bankrupt.

Substantially to the same effect is *In re Francis Schnepf*, 7 Am. Law Reg. 204.

*In re Abraham B. Clark and Abraham Bininger*, 3 Bank. Reg. 123, Clark commenced an action against his

copartner Bininger, in the superior court of the city of New York, on the 19th of November,-1869, for the dissolution of the partnership, and praying the appointment of a receiver. The receiver was appointed on the 19th of November, and on the same day he took possession of the partnership effects. On the 11th day of December, 1869, a petition in involuntary bankruptcy was filed against Clark & Bininger, under which they were adjudged bankrupts. The receiver resisted the marshal in his endeavors to take possession of the copartnership estate of the bankrupts. Upon petition, presented by the assignee, it was held that all right of action of the plaintiff Clark was vested in the assignee. Clark was ordered to execute to the assignee a proper instrument to enable him to prosecute the suit pending in the State court, and all further proceedings, without the consent of the bankruptcy court, were enjoined. And, as it was thought desirable that the possession of the receiver should not be disturbed, until the subtitution of the assignee took place, a decision upon that portion of the assignee's petition, praying the possession of the property in the receiver's hands, was deferred.

The case of *Clark* v. *Bininger*, in the superior court of New York, 9 Am. Law Reg. 304, is the one referred to in the above case. In this case the superior court of New York held that, where the jurisdiction of a State court has attached in a bill for an account between partners, the jurisdiction is not disturbed by a subsequent adjudication in bankruptcy; and the assignee, for attempting to take the property from the custody of the receiver, was punished for a contempt.

The case of *The United States* v. *The Judges of the Superior Court of the City of New York*, 9 Am. Law Reg. 297, grew out of the order in the above case, of the superior court of the city of New York, adjudging the assignee guilty of a contempt. A petition was filed in the circuit court of the United States for the southern district of New York,

asking a writ of prohibition to the State court. It was held that the power of the circuit court of the United States to issue a writ of *prohibition* to another court is confined to cases where the issuing of such writ is necessary for the exercise of its own jurisdiction, and the writ was denied.

In *Samson* v. *Burton*, 4 Bank. Reg. 1, Oscar A. Burton in 1860, and subsequently, instituted various suits against Alunson M. Clark, in the State courts. These suits were pending at the time the petition in bankruptcy was filed. On the 18th day of February, 1870, the day before the filing of the petition in bankruptcy, Clark and Burton entered into a written agreement with reference to their disputes. The assignee filed his petition in the bankruptcy court, asking that Oscar A. Burton be restrained from proceeding in the State court, and that the bankruptcy court proceed to settle the claims Clark and Burton had upon each other. The latter part of the prayer was denied. Burton was enjoined from making any use of the agreement of the 18th of February, 1870, and Clark was required to execute such papers to the assignee as would enable him to prosecute the causes pending in the State courts.

*In re Geo. J. Davis*, 2 Bank. Reg. 125, was a case in which a creditor of the bankrupt held a claim secured by a deed of trust, in the nature of a mortgage, with a power of sale in a third person, as trustee. It was held that he must prove his debt as a creditor holding a security, and obtain the permission of the court to have the security sold, and that a sale without such permission would be set aside.

*In re Bates* v. *Tappan*, 3 Bank. Reg. 159, it was held that the provision of the United States bankrupt act, that an assignment under the act shall vest in the assignee the title to all the bankrupt's property, although the same is attached on *mesne* process, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings in bankruptcy, does

not prevent the enforcement of a judgment against the bankrupt, on a portion of his property attached in the action more than four months before he commenced proceedings in bankruptcy. *Bowman* v. *Harding*, 4 Bank. Reg. 5, decides the same point.

In *Charles Armstrong, assignee,* v. *Rickey Bros.,* a judgment, obtained in the State court of Ohio, and a levy made thereon the day before the petition in bankruptcy was filed, were sustained.

*Sedgwick* v. *Minick,* 1 Bank Reg. 204, is as follows:

On the 6th day of Jan., 1857, Andrew Beiser, being insolvent, made an assignment of his property, giving preference among his creditors. In Jan., 1868, Beiser was adjudged a bankrupt. The assignee claimed the property of the bankrupt theretofore assigned.

NELSON, J. said: "It is difficult to see what right exists in the assignee in bankruptcy to this property thus devoted by the law to the payment of the debts of these judgment creditors, some ten years before any right attached in bankruptcy," and his right thereto was denied.

In *Hawkins' Appeal,* supreme court of errors of Connecticut, 8 Am. Law Reg. 205, it was held that the bankrupt act does not absolutely and totally suspend or abrogate State insolvent laws, and that a voluntary assignment, good at common law, will be sustained where no proceedings have been instituted under the bankrupt act.

In *Ex parte Donaldson,* 7 Am. Law Reg., p. 213, a creditor had acquired a valid lien *prior* to the commencement of bankruptcy proceedings. The bankruptcy court refused to restrain, delay or hinder the creditor in prosecuting his claim.

*In re Wallace,* 2 Bank Reg., p. 52, the bankrupt petitioned for an injunction to prevent certain of his creditors who had obtained judgments against him, pending the bankruptcy proceedings, from selling his property on

Stuart v. Hines & Eames.

execution after he had been adjudged a bankrupt. The judgments were obtained after the filing of the petition in bankruptcy, in pursuance of attachments levied within four months of the commencement of bankruptcy proceedings. It was held that the attachments were dissolved by the assignment to the assignee, and must be considered as of no effect. That the respondents could not subject the estate of the bankrupt to the exclusive payment of their particular demands, and they were enjoined from selling the property under execution.

Thus we have reviewed all the authorities cited by appellant. Not one of them is a case where an attempt was made in a State court to acquire a lien against the property of the bankrupt, after the filing of the petition in bankruptcy. Not one of them, even by implication or analogy, sustains the validity of such a lien. Indeed, the last case is a very strong one against the position of appellants, for if an attachment, levied within four months *prior* to the filing of the petition in bankruptcy, will in another court be held void, and execution for the enforcement of the .judgment be stayed by injunction, what becomes of an attachment levied many months *after* the petition in bankruptcy is filed?

In the case at bar the petition for an adjudication of bankruptcy was filed on the 31st day of December, 1868. The filing of this petition constituted the commencement of the bankruptcy proceedings.

The filing of a petition for adjudication in bankruptcy, either by a debtor in his own behalf, or by any .creditor against a debtor, upon which an order may be issued by the court, or by a register in the manner provided in section 4, shall be deemed and taken to be the commencement of proceedings in bankruptcy under this act." Bankrupt Act, § 38.

*In re Patterson,* Bank. Reg. Sup. 27. " When an adjudication of bankruptcy is made, following the filing of a

petition, then it is judicially established that the proceedings in the case commenced when the petition was filed."

*In re Patterson, supra,* section 14 of the bankrupt act provides: " That as soon as said assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and such assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings." The date of the filing of the petition in bankruptcy becomes the date from which the assignee takes all the property of the bankrupt, which was his property at that date.

*In re Patterson, supra.* " The commencement of proceedings in bankruptcy operates as a *supersedeas* of all process in the hands of the officer of any other court, and as an injunction against all other proceedings than such as may afterward be had under the authority of the court of bankruptcy, until such case is closed. Thus the levy of an execution, or the filing of a bill to foreclose a mortgage, or the filing of a libel *in rem*, or the issuing of a distress warrant, or the filing of a mechanic's lien claim where the lien only exists from the time of such filing, or the issuing of a writ of replevin for the purpose of affecting the estate, are null and void, when such proceedings are instituted in any other court after that time. Claims against the bankrupt's property can only be enforced in the court of bankruptcy during the pendency of the proceedings, and this principle extends not only to liens, but to all controversies concerning even the title to property which was in his possession

at the time of filing the petition." Bump's Law and Practice of Bankruptcy, citing *Pennington* v. *Sale & Phelan*, 1 Bank. Reg. 157; *In re Kerosene Oil Co.*, 2 id. 164; S. C., 3 id. 31; *In re People's Mail Steamship Co.*, 2 id. 170; *In re Charles H. Wynne*, 4 id. 5; *In re Dey*, 3 id. 81; *In re Vogel*, 2 id. 138; S. C., 3 id. 49; which fully sustain the doctrine of the text.

The conveyance to the assignee was made on the 28th day of October, 1869, and related back to the 31st day of December, 1868, and vested in the assignee all the property of the bankrupt owned by him at that date. The attachments under which the defendants claim were all levied after the petition in bankruptcy was filed. The authorities cited clearly settle the doctrine, that after the filing of a petition in bankruptcy, no valid lien upon the property at that time owned by the bankrupt can be acquired by proceedings in a State court, and are conclusive in favor of the assignee against these defendants. And, if this were not so, the requirements of the bankrupt act might easily be ignored, and its provisions nullified. It can have force and efficiency, and can accomplish its purposes by no other construction.

There is another view of this case which is equally conclusive against the title of these defendants. The sale of the land upon execution to Jacob Butler, under the Hines & Eames judgment, occurred on the 25th of June, 1870. On the 9th of November, 1869, the deed of conveyance to the assignee was recorded in Muscatine county, and, by the provisions of the bankrupt act, section 14, related back to the 31st day of December, 1868, the date of filing the petition in bankruptcy. It was apparent of record then, at the time of the sale upon execution, that the judgment debtor had no title to, or interest in, the property sold. Hence, under the doctrine of *Norton, Jewett & Busby* v. *Williams*, 9 Iowa, 528, the purchaser at sheriff's sale acquired no title. See, also, *Bell* v. *Evans et al.*, 10

Iowa, 353. And as it does not appear that the sales under the judgments of Streeter & Co., and of the Farmers' Saving's Association occurred before the deed to the assignee was recorded, nor indeed that any sale has taken place under these judgments, the same principle applies as to them. And as Powers & Newman are simply attaching creditors, without any judgment, the deed to the assignee, though unrecorded, takes precedence of their claim. *Bell* v. *Evans, supra.*

Appellants claim that the allegation that they are the owners of the premises in dispute, by virtue of the pro-

2. PLEADING : replication.  ceedings in the State courts, makes a counter-claim of title, which, not being denied by plaintiff, must be taken as admitted. This position is not tenable. The allegation of title is made merely as a defense to plaintiff's claim. No affirmative relief is sought against the plaintiff. A counter-claim is a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them. Rev., § 2889.

It is further claimed that it was the duty of the assignee to appear and defend in the State court, in place of the

3. BANKRUPTCY PROCEEDINGS: failure of assignee to defend in State court.  bankrupt, and that having failed to do so, he is estopped from asserting any claim to the property. This position is equally unsound. The bankrupt act authorizes the assignee to prosecute and defend for the bankrupt, causes *pending* at the time of filing the petition in bankruptcy. Section 16. We find no provision of the bankrupt law, nor any adjudged case, which requires the assignee to go into a State court to defend an action commenced against the bankrupt subsequently to the date of filing the petition in bankruptcy. Such a determination would be in direct conflict with the whole current of the authorities, which hold that all proceedings instituted against the bankrupt, after the filing of the petition, in any other court than the court of bankruptcy, are invalid. Besides, the judgments

Stuart v. Hines & Eames.

in all the cases, which have been prosecuted to judgment, were rendered *before* the assignee was appointed.

We conclude that the first position assumed by appellants can not be maintained.

II. *As to the jurisdiction of the bankruptcy court over the person and property of Thomas M. Isett.* This question may be briefly considered. Appellee claims that the deed of assignment is, in this case, *conclusive* that such jurisdiction existed. In the view which we take of the case, we need not determine as to the soundness of this claim.

4. —— service of order.

The petition in bankruptcy was addressed to the Hon. Samuel Blatchford, judge of the district court of the United States, for the southern district of New York. The order upon Thomas M. Isett, to show cause why the prayer of the petition should not be granted, was served in Jersey City, State of New Jersey, by Fisher A. Baker, one of the solicitors of Farr and Kerr, the petitioners.

Appellants claim, first: That personal service cannot be made out of the district in which the petition is filed. Second : That service must be made by the U. S. marshal, or by a messenger, as provided by statute.

1. The first position is not sound. Section 36 of the bankrupt act provides that a partnership may be declared bankrupt upon the petition of any one of its members. Rule 18 promulgated by the supreme court of the United States, Bump's Bankruptcy, 487, provides that notice shall be given to any partner refusing to join in the petition, in the same manner as provided in the case of a debtor petitioned against. Section 40 of the bankrupt act provides that, upon the filing of the petition in bankruptcy, the court shall direct the entry of an order requiring the debtor to appear and show cause why the prayer of the petition should not be granted. "A copy of the petition and of such order to show cause shall be served on such debtor by delivering the same to him personally, or leaving

the same at his last or usual place of abode; or, if such debtor cannot be found, or his place of residence ascertained, service shall be made by publication, in such manner as the judge may direct." Bump's Bankruptcy, 449.

The act is entirely silent as to the place of service. The mode is. designated. Under section 11 of the bankrupt act, any member of a firm may file his petition to have the firm declared bankrupt, in any district where the partnership business has been carried on for the longest period of the six months immediately preceding the filing of the petition. In such case, if the other members of the firm reside out of the district where the business is carried on and the petition is filed, efficiency can be given to this provision only by service out of the district. We do not, however, understand appellants to deny the power to obtain service out of the district. They contend that such service can be made only by publication. But the act authorizes service by publication only when the party to be served cannot be found, or his place of residence ascertained. The fact that Isett *was found* and personally served, shows that he does not come within the exception authorizing service by publication.

Hence, if any service outside of the district in which the petition is filed is proper, personal service must be.

2. The second position is, in our opinion, equally untenable. The act nowhere provides *by whom* this service shall 5. —— by whom be made. Section 11 of the act provides that served. the judge or register shall issue a *warrant* directed to the marshal; and section 40 provides that the court may issue a *warrant* to the marshal of the district, commanding him to arrest the said bankrupt. The fact that the act makes special provision for the service of certain processes by the marshal, and remains entirely silent as to the person by whom the order to show cause shall be served, is a strong argument against the position that such

order can be served by the marshal only. *Expressio unius est exclusio alterius.*

In the case of *McMillan* v. *Scott & Allen*, 2 Bank. Reg. 28, the question was raised whether a *subpœna* could be served by the party. In determining the question, McCandless, district judge, holds this language : "It is true that the marshal is the executive officer of the court, and may be directed by the court to serve it, but the mandate of the writ is not to him, but to the witness, who is commanded to appear and testify. As there is no legislation of congress directing the service of a subpœna by the marshal, we do not feel disposed to depart from the practice of the State courts, which has always permitted the party to serve the precept, and allowed him costs for the same. The first section of the act of 24th of September, 1799, requires the marshal 'to execute throughout the district all lawful precepts *directed to him*, and issued under the authority of the United States.' But the subpœna is not directed to him, but to the witness, and the marshal might legitimately refuse to serve it, unless commanded so to do by an order of the court." The order to show cause, in like manner, is not directed to the marshal, but to the debtor, and in the absence of legislation upon the subject we know of no reason why another may not serve it.

III. Some objection is urged in the argument to the sufficiency of the averments of the petition in bankruptcy. 6. —— jurisdiction: pleading. It is averred that the petitioners for the six months next preceding the application have been residents of the judicial district in which the petition is filed, and that they and said Isett within said time were partners in trade in said district. While it might have been more formal if the petition had averred that during the past six months they had been engaged for the longest period, in business in said district, thus negativing the idea that as to said firm the proper jurisdiction was elsewhere,

yet as the court to which it was directed has treated it as sufficient, and it does not appear that the firm did business for a longer period in any other district, we must, for the purposes of this proceeding, regard the petition as containing enough to confer upon the court jurisdiction of the application.

We discover no error in the judgment of the district court.

Affirmed.