W. R. STEWART, ·JR., Appellant, v. WALTER M. GORHAM
*et al.*, Appellees.

**Accounting:**   ASSIGNMENT OF CAUSES FOR TRIAL.   Code, section 3659
authorizes the trial court to assign cases for trial on particular.
days, but it may without such formal assignment proceed
with the trial of causes triable at the term as reached in
their regular order.

**Assignment of Causes:**   STATEMENT OF COUNSEL.  The statement of
an attorney in the absence of opposing counsel that "he did not
believe plaintiff intended to prosecute his action." is insuffi-
·cient to support a contention that the court was misled in
assigning the cause for trial when reached in its order.

**Practice:**   FAILURE TO APPEAR:   DISMISSAL OF ACTION:   CROSS-BILL.
Where the plaintiff fails to appear and prosecute an action at
the time it is reached for trial it should be dismissed with
costs, unless defendant has filed a counterclaim or cross-bill
entitling him to a trial thereof, but to entitle the defendant
to proceed his pleading must contain within itself the essen-
tial elements. of a new cause of action.   Allegations of the
answer considered and held insuffi e 1ʰ to constitue a cross-bill
and that the action should have been dismissed for want of
appearance.

· *Appeal   from   Muscatine   District   Court.*—HON.   P.   B.
WOLFE, Judge.

WEDNESDAY, FEBRUARY 10, 1904. ·

ACTION in equity brought for an accounting.   A state-
ment of the issues as made by the pleadings is necessary to
an understanding of the questions made on this appeal.   It
is said in the petition that in the year 1897 plaintiff entered
into a contract in writing with the Muscatine North & South
Railway Company by the terms of which plaintiff agreed
to secure a right of way and to construct and equip a line of
railway extending from the city of Muscatine, in this state,
to the town of Elrick, in this state, "and to render services,

and deliver services already rendered, concerning taxation along and in aid of said line of railway." It is said that the capital stock of said railway company was of the face value of $450,000; that bonds had been issued by said company in the sum of $450,000, and that there had been pledged to said company the sum of about $100,000 in aid of the building of said line of railway, and to be raised by public taxation; that all said bonds and taxes and all said stock, except a few shares, were to be delivered and paid to plaintiff in consideration of the construction and equipment of the road by him. Plaintiff says that, after having partially completed the work, he assigned the work of completing the remainder to the Tennis Construction Company, the said company becoming liable to him for the part of the work already performed; that the Tennis Company prosecuted the work for a time, and, during the same, became indebted to one Birmingham for moneys loaned, and to the defendants Balch & Peppard and Lewis & Co. for labor and materials, all used in such work. The defendant Gorham is a partner in the firm of Lewis & Co., and it is not alleged that he is otherwise interested in the case. The Tennis Company abandoned the work before completion, and failed to pay the obligations due to said Birmingham and to the defendants in this action. Thereupon, as it is alleged, plaintiff and these defendants undertook to protect themselves, and to provide for a completion of the work. Pursuant thereto, and in November, 1898, defendants, by consent of plaintiff, the Tennis Company, and Birmingham, submitted a proposition in writing to the railway company, in which, after reciting the condition of affairs then existing, defendants proposed, in substance, to complete the work in question; the consideration therefor to be the entire capital stock of the railway company, except a few shares issued to the directors of said company, the bonds of the company, and all taxes or subsidies or aid voted to the company, or agreed to be paid to it, to aid in building the line. The proposition so made was formally accepted by the railway company. In the resolu-

tion of acceptance, however, there is excepted from the operation thereof the amount of a tax—$2,500—voted by a certain township named; it being stated that an order therefor had previously been given to one Hittig.   Plaintiff alleges that thereupon a contract in writing was entered into between himself, of the one part, and defendants, of the other part, wherein it was agreed that the stock and bonds so to be received by them, said defendants, should not be sold, except by mutual consent of all parties to such contract, before July 1, 1899, after which the parties holding same might sell at such price as to them may seem proper, first giving to this plaintiff the option of purchasing the same at the price offered, and such option to continue thirty days. The contract, a copy of which is attached to and made a part of the petition, then provides that the proceeds arising from the sale of said stocks and bonds, and the amount of all taxes, etc., received, shall be used, first, to pay in full the cost of completing the construction and equipment · of the   road. There is then to be paid these defendants the amount due them under their contract with the Tennis Company, and they are then to have $30,000, face value, of said bonds. There is then to be paid to this plaintiff $12,500, and to the said Birmingham bonds of the face value of $10,000, and to the Tennis Company the sum necessary to reimburse it for the amount actually expended by it under its contract; the amount so to be paid plaintiff to be treated as part of the cost of construction, but not to be due or payable until the proceeds realized from the sales of stocks, bonds, etc., shall be sufficient to pay the entire cost of construction and equipment of the road.   Lastly, the contract provides that if, after payment of all the sums so referred to any sum shall remain, it shall be divided equally between Balch & Peppard, Lewis & Co., and this plaintiff.   In February, 1899, plaintiff and said defendants agreed in writing that the provisions of the former contract fixing a time limit within which the bonds and stocks should not be sold, and the provision giving to plaintiff an optional right to purchase, should stand as can-

celed and abrogated. It is then provided that "the parties hereto have the privilege of selling the stocks and bonds * * * at any time they so desire, and at such price as they deem best, provided they shall not dispose of the bonds at less than eighty-five per cent. of face value." It is then alleged in the petition that defendants thereafter prosecuted the work in question to completion; that they have received and converted to their own use the stock, bonds, and taxes referred to, the amount thereof over and above the cost of construction, etc., being about $500,000. Plaintiff prays an accounting, and for judgment upon the same being had in the sum of $50,000, and that all the rights and obligations of the parties be fixed and determined.

The defendants appeared and filed a pleading denominated an "answer and cross-petition." The pleading is in one division only, and therein the cost of construction and equipment is alleged; the same amounting to $383,746, not counting some contingent claims yet to be adjusted. The receipt of $87,900 from taxes, etc., voted, is admitted, out of which defendants say they have paid on construction claims the sum of $40,614, the balance being now in their hands. Defendants admit that they have in their hands the bonds issued by said railway company, save that $10,000 thereof were delivered to said Birmingham, and except $4,500 thereof alleged to be in the hands of plaintiff. Defendants also admit the possession of stock of said company in the sum of $360,000, face value. They deny, however, that they have sold, appropriated, or converted to their own use any of the stock or bonds received by them, and they say they know of no market in which such stocks and bonds can be sold at any price, and allege their belief that sufficient cannot be realized therefrom in any event to pay the cost of construction, etc., of said road; allege a willingness to make sale of the stock and bonds at any time when the amount due them can be realized therefrom or to turn the same over to plaintiff upon payment of their dues. Further answering, defendants say that, when they made their proposition to

the railway company, it was represented to them by plaintiff, who was then president of the company, that they were to have all taxes voted the company; that, upon discovery that $2,500 of such tax had been assigned to Hittig, they refused to proceed with the arrangements, whereupon plaintiff verbally agreed that the amount so paid Hittig should be charged to his (plaintiff's) share of any surplus, if any there should be, arising from the sale of the stock and bonds, after deducting costs of construction, etc., as provided in the contract between them. Defendants say that accordingly said sum should be now charged to plaintiff. Defendants further allege that at the time of making their proposition they were induced by plaintiff to believe that the right of way and depot grounds had been provided and paid for; whereas they say they were compelled to, and did, pay out the sum of $15,000 to secure necessary right of way and depot grounds, and still have other payments to make on that account. And defendants say that said sum of $15,000 is equitably due them from plaintiff, and should be paid before he receives any sum from the proceeds of said stock and bonds when sold. Defendants further say that they have paid the interest on the bonds held by plaintiff and Birmingham, aggregating $1,300, for which sum they should have credit on settlement. Defendants pray that they may be authorized to sell the stock and bonds in their hands at such price and on such terms as to them seems best; that plaintiff be required, within some short time to be fixed by the court, to purchase and pay for said stock and bonds at such price as will pay all sums due defendants, with interest, and, failing to do so, that he be barred of all interest in or claim to said stock and bonds; that an account be taken of the standing of the parties, and that they have judgment against plaintiff for $15,000, or such greater sum as shall be found due from him; and that they have such other relief as equity may require.

On October 14, 1901, at a regular term of court, said cause was taken up for trial. The plaintiff did not appear

in person or by counsel. It is conceded that no special assignment of the case had been made for that or any other day. The court proceeded, however, and the defendants introduced evidence showing the amounts which had been paid out by them in the construction, etc., of the road; also evidence showing the amount of taxes received, and evidence showing that they still hold all the stock and bonds in question, undisposed of, save the bonds in the hands of plaintiff and those delivered to Birmingham. No further evidence was offered or introduced. On the same day a decree was entered in which the court finds that the amount due defendants is a charge upon the stock and bonds in their hands. It is then ordered and decreed "that at any time within thirty days from this date the plaintiff may purchase, or cause to be purchased, for cash, said stock and bonds, at any price exceeding the amount of the lien of defendants thereon, with interest, and, upon such purchase price being deposited with the clerk, defendants shall within ten days deposit with the clerk, for the benefit of the purchaser, said stock and bonds; that any excess of purchase money over and above the lien of defendants shall be divided into three shares, and be paid one share to plaintiff, one to Balch & Peppard, and one to Lewis & Co. If plaintiff shall not deposit or cause to be deposited said sum within the time limited, it is hereby ordered that defendants be, and they are hereby authorized to dispose of said stock and bonds as they shall see proper, and the said plaintiff be and he is hereby debarred and estopped from ever setting up any claim thereto or any interest therein, and that plaintiff pay the costs of this suit." On October 16, 1901, plaintiff appeared and filed a motion to set aside the decree; also to reinstate the cause, and for new trial. The motion was resisted, and upon hearing the same was overruled. From such ruling, and from the decree as entered, the plaintiff appeals.—*Reversed.*

*Charles D. Fullen, H. M. Eicher,* and *E. M. Warner* for appellant.

*George W. Seevers* and *Jayne & Hoffman* for appellees.

BISHOP, J.—Appellant has assigned errors based upon the order of the court overruling his motion for new trial, etc. It is contended, in the first instance, that the court was not authorized to proceed with the trial on the day such trial was had, for the reason that no special assignment of the case had been made for that day. Conceding that the record shows affirmatively that no formal assignment of the case had been made, we do not think there is any merit in the contention. The term of court being held was one at which the case was properly triable, and the court took it up in its order when reached. Section 3659 of the Code, relied on by plaintiff, simply authorizes the court, in arranging its business for the term, to make assignments of cases for particular days. It is not obliged to do so, however. The language used is permissive in character, and there is nothing in the general object to be attained which makes it necessary to read the mandatory word "must" into the statute in lieu of the word "may," now appearing therein.

*1. ASSIGNMENT of causes.*

II. A further assignment of error is based upon the contention that the trial court was misled by statements made by defendants' counsel, and that, but for such statements, the court would not have ordered the trial to proceed. There is no merit in the contention. The only statement complained of as having been made was that counsel said he did not believe plaintiff intended to prosecute his action. There are no circumstances showing that any legal prejudice resulted therefrom, or that the court was misled or in any way influenced by the statement as made. Equally without merit is the claim made that, in view of the conference and correspondence shown to have been had between counsel for plaintiff and counsel for defendants, the action of the latter in proceeding to a trial of the case operated as a fraud upon the former and upon the court. We need not set out the showing made. It is sufficient to say that, in our view, counsel for plaintiff were trying to get this case placed at the foot of their list of engagements, and coun-

*2. ASSIGNMENT of causes;statement of counsel.*

sel for defendants were sturdily resisting such an arrangement, and insisting that the case be tried when reached in its order.

III.   Counsel for appellant insists that when the case was reached for trial, and there being no appearance on his behalf, the action should have been dismissed.   Code, section 3764.   It is true enough that the law does not visit upon a plaintiff in default for want of appearance at the time of trial any other penalty than the dismissal of his action, with costs. But if there be a counterclaim or cross-bill filed, such is not abated by the failure of plaintiff to appear, or the dismissal of his action, and the defendant may proceed to trial on such counterclaim or cross-bill.   Code, section 3766; *Foster v. Ellsworth,* 71 Iowa, 262.   In the instant case the pleading on behalf of defendants, as we have seen, was denominated an "answer and cross-bill."   It follows that if therein is set up facts constituting an affirmative cause of action, on proof of which affirmative relief as prayed for should be granted, then defendants were entitled to proceed.   But it is not enough that the pleading of the defendants be denominated a "cross-bill" if it is not such in fact.   Thus it will not be sufficient if it appear that the averments of the pleading are all defensive in character; that is, a statement of matters of fact brought forward, designed and intended simply to defeat, in whole or in part, a recovery by plaintiff:   To entitle a defendant to proceed, his pleadings must state an independent cause of action, with an appropriate demand for relief.   It is not material that the cause stated involves, to a greater or less extent, the subject-matter of the cause of action as stated by plaintiff in his petition, but it must contain within itself the essential elements of a cause of action.   In legal effect, the defendant becomes plaintiff, and the plaintiff becomes defendant.   Code, section 3570; *Stuart v. Hines,* 33 Iowa, 60; *Muir v. Miller,* 82 Iowa, 700; *Palmer v. Palmer,* 90 Iowa, 17.

It is clear that the trial court proceeded upon the theory that the pleading filed by defendants in this case was in fact,

3. PRACTICE: failure to appear: dismissal of action: cross-bill.

as well as in name, a cross-bill. We are unable to agree that such effect should be given to the pleading. In brief, the case stated by plaintiff is that defendants hold the stocks, bonds, and taxes in trust; the obligation being to pay therefrom, or from the proceeds, the costs and expenses of construction, etc., and to account to plaintiff for a share of the balance, if any remain. All this the defendants admit. But they say that plaintiff agreed that there might be deducted from his share, if any surplus there should be, the amount of the taxes paid to Hittig; and they ask that this be done. They also say that they were compelled to pay out more money for right of way, etc., than they had been led to expect, and this they say should be deducted from the fund in their hands before any division of surplus is made. They also say that they have paid the interest on the bonds held by Birmingham and by plaintiff, and they ask that the sum so paid shall be credited to them on settlement. Such is the sum and substance of the affirmative matters pleaded. That all such are purely defensive in character, intended to reduce the amount of plaintiff's recovery, or defeat a recovery *in toto,* seems too plain for argument. There is not a suggestion, even, that plaintiff is obligated or indebted to defendants in any such way as to entitle them to a money judgment against him. Indeed, we think our view corresponds with that taken by the pleader, inasmuch as each paragraph of the pleading, other than those making admission of averments of the petition, begins: "Further answering, defendants say," etc. Moreover, there was no attempt to make proof of any of the affirmative matters referred to on the trial, and the decree contains no reference thereto. The fact that affirmative relief is asked in the prayer cannot, of course, be considered, where the averments of the pleading do not warrant such relief. *Burroughs v. McLain,* 37 Iowa, 189. It may be said, however, that the pleading makes admission of the contract between plaintiff and defendants, and that such contract may therefore be considered not only as a part of the pleading, but that the same was proper to be considered by the court as evidence. And this, we think, may be

accepted as true. But the contract provides that the parties thereto may sell the bonds and stocks at any time they so desire, subject to the limitation that the bonds shall not be sold at less than eighty-five per cent. of their par value. Now, if it shall be said that the fact of the contract appearing, aided alone by the allegation of the defendants' pleading to the effect they knew of no market in which the bonds can be sold at eighty-five per cent. of par value, or in which the stock can be sold at any price, makes out a case for equitable relief—a position we do not think is tenable—still there is no possible ground upon which the court would be warranted in passing a decree requiring the plaintiff to purchase or find a purchaser for such stock and bonds within thirty days, under penalty of having all his rights. and interest cut off and forever foreclosed. And this is especially true in view of the fact that no proof whatever was offered, bearing upon the market or sale value of the stock and bonds, or that any attempts had been made to agree upon sale thereof, or to find a purchaser therefor. The evidence introduced was to the effect that defendants were still in possession thereof, and there was no attempt to make further proof.

We conclude that the pleading filed by defendants was not a cross-bill entitling them to proceed after default for want of appearance by plaintiff, and that the entire action should have been dismissed at the costs of plaintiff; that the decree entered, not being based upon any sufficient pleading, and having no support in evidence, must be reversed. As the dismissal of plaintiff's action must be without prejudice, a proper regard for the rights of defendants requires that the determination of this action shall not be held to conclude them in any future proceeding.

The decree is reversed, and the cause is remanded, with instructions to dismiss the action; the costs of the action in the court below, made up to the time of default, including costs of entering judgment, to be taxed to plaintiff; all other costs there made to be taxed to defendants. The costs in this court will be taxed to appellees.—REVERSED and REMANDED.